IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA CANDUSSO,<br><br>   Plaintiff,<br><br> vs.<br><br>KILOLO KIJAKAZI,<br><br>   Defendant. | Civil Action No. 21-437 |

ORDER

AND NOW, this 17th day of August 2022, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 13) filed in the above-captioned matter on October 13, 2021,

IT IS HEREBY ORDERED that the Motion is DENIED.

AND, further, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 16) filed in the above-captioned matter on November 8, 2021,

IT IS HEREBY ORDERED that the Motion is GRANTED.[1]

**I.**  **Background**

Plaintiff applied for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. § 401 *et seq.* on December 18, 2018. (R. 15). She pursued that claim before an Administrative Law Judge ("ALJ") who, on June 26, 2020, rendered a decision finding Plaintiff was not disabled under the Act. (R. 26). That decision became the Commissioner of Social Security's ("Commissioner") final decision pursuant to 20 C.F.R. § 404.981 when the Appeals Council denied Plaintiff's request for review on February 10, 2021.

---

[1] Defendant has asked that costs be taxed against Plaintiff. (Doc. No. 16, pg. 2). This order excludes an award of costs because that component of Defendant's request for relief was not argued in the accompanying brief. *Pa. Dep't of Pub. Welfare v. U.S. Dep't of Health & Hum. Servs.*, 101 F.3d 939, 945 (3d Cir. 1996).

1

(R. 1). Before the Court, Plaintiff challenges the decision denying her application for benefits and seeks remand of this matter for further administrative proceedings. In pursuit of her requested remedy, she has argued that the underlying administrative proceedings, the ALJ's decision, and the Appeals Council's denial of her request for review deprived her of a constitutionally valid determination of her disability. She has further argued that the ALJ's determination of her residual functional capacity ("RFC") is unsupported by substantial evidence. Defendant opposes remand and defends the ALJ's final decision as being supported by substantial evidence. The Court, having considered the arguments set forth in the parties' motions for summary judgment, will affirm the agency's decision denying Plaintiff's DIB application.

## II.   Standard of Review

The Court is authorized to review the Commissioner's final decision by 42 U.S.C. § 405(g). *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Court's review of legal questions is plenary, and the Court reviews findings of fact for substantial evidence. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).

## III.   Legal Analysis

Plaintiff's main argument for remand is that she was "deprived . . . of a valid administrative adjudicatory process." (Doc. No. 14, pg. 5). She argues that, throughout the administrative proceedings in this matter, former Commissioner Andrew Saul enjoyed unconstitutional protection from at-will removal from that office by the President, pursuant to 42 U.S.C. § 902(a)(3). She alleges that she suffered injuries arising from Section 902(a)(3), such as

the denial of a constitutionally valid hearing, adjudication, and decision(s) from the ALJ and the Appeals Council because those Social Security Administration ("SSA") officers derived their authority from Commissioner Saul.  Defendant, Acting Commissioner Kilolo Kijakazi, concedes that Section 902(a)(3) is constitutionally defective, but argues Plaintiff suffered no compensable harms.

The removal-restriction provision in Section 902(a)(3) does appear to be an unconstitutional restriction of the President's power to remove executive officers.  The SSA is headed by a Commissioner who is "appointed by the President, by and with the advice and consent of the Senate" for "a term of 6 years."  *Id.* §§ 902(a)(1), (3).  Section 902(a)(3) purports to protect the Commissioner from removal prior to the expiration of the six-year term absent a finding of "neglect of duty or malfeasance in office."  *Id.*  Serious doubt was cast on the constitutionality of that protective provision by the Supreme Court's recent decisions in *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), and *Collins v. Yellen*, 141 S. Ct. 1761 (2021).  In their wake, most courts have found the removal-restriction provision in Section 902(a)(3) to be indefensible.  Herein, this Court joins them.

"The President's power to remove—and thus supervise—those who wield executive power on his behalf follows from the text of Article II."  *Seila Law*, 140 S. Ct. at 2191—92 (citing *Myers v. United States*, 272 U.S. 52 (1926)).  In *Seila Law*, the Supreme Court decided that the structure of the Consumer Financial Protection Bureau ("CFPB") violated the Constitution's separation of powers in its insulation of the CFPB Director from removal except for cause.  *Id.* at 2191—92.  Once appointed, the CFPB Director could only be removed by the President "for inefficiency, neglect of duty, or malfeasance in office."  12 U.S.C. § 5491(c)(3).  The Supreme Court struck down that restriction of the President's removal power, explaining

that the President must have the power to remove "subordinate officers" who assist him in fulfilling his duty to "take Care that the Laws be faithfully executed." *Id.* (citing U.S. Const. Art. II, §§ 1, 3).[2] The ramifications of *Seila Law* for the SSA were not entirely clear at the time of that decision. Though there undoubtedly were similarities among the SSA and CFPB, those agencies were distinguished in *Seila Law* wherein it was observed that, "unlike the CFPB, the SSA lack[ed] the authority to bring enforcement actions against private parties." *Id.* at 2202.

However, doubt concerning *Seila Law*'s application to the removal-restriction provision in Section 902(a)(3) was soon thereafter resolved by the Supreme Court's decision in *Collins*. In *Collins*, the Supreme Court considered a constitutional challenge to the structure of the Federal Housing Finance Agency ("FHFA"). 141 S. Ct. at 1770. The act creating that agency dictated that the FHFA would be "led by a single Director who is appointed by the President with the advice and consent of the Senate." *Id.* at 1771 (citing 12 U.S.C. §§ 4512(a), (b)(1)). The act further dictated that the FHFA Director would serve a five-year term and would only be removable "by the President 'for cause.'" *Id.* (citing 12 U.S.C. § 4512(b)(2)). Explaining that *Seila Law* was "all but dispositive," the Court held that the "for-cause restriction on the President's removal authority violates the separation of powers." *Id.* at 1783. The Court "rejected, as unpersuasive, several proffered distinctions between" the CFPB and the FHFA and held that "even 'modest restrictions'" of the President's ability "to remove the head of an agency

---

[2] The Court thus declined to carve out a third exception to the general rule against congressional limitations of the President's removal power, the other two being: (1) the exception for congressionally created "expert agencies led by a *group* of principal officers," and (2) "certain *inferior* officers with narrowly defined duties." *Seila Law*, 140 S. Ct. at 2192 (citing *Humphrey's Executor* v. *United States*, 295 U.S. 602 (1935); *United States v. Perkins*, 116 U.S. 483 (1886); *Morrison v. Olson*, 487 U.S. 654 (1988)).

with a single top officer" was unconstitutional. *Kaufmann v. Kijakazi*, 32 F.4th 843, 848 (9th Cir. 2022) (citing *Collins*, 141 S. Ct. at 1787).

Courts considering post-*Seila Law*/*Collins* challenges to Section 902(a)(3)'s removal-restriction provision have decided that the provision is unconstitutional, though severable from the rest of the statute. *Kaufmann*, 32 F.4th at 849; *Stamm v. Kijakazi*, No. 3:20-CV-02273, 2021 WL 6197749, at *5 (M.D. Pa. Dec. 31, 2021); *Mor v. Kijakazi*, No. CV 21-1730 (JMV), 2022 WL 73510, at *5 (D.N.J. Jan. 7, 2022); *High v. Kijakazi*, No. CV 20-3528, 2022 WL 394750, at *5 (E.D. Pa. Feb. 9, 2022). This is consistent with the position taken by the Department of Justice after *Collins* in a memorandum opinion that immediately preceded President Biden's removal of Andrew Saul from the office of Commissioner just two years into his six-year term. *Constitutionality of the Commissioner of Social Security's Tenure Protection*, 2021 WL 2981542, at *11 (O.L.C. July 8, 2021); *Rives v. Comm'r of Soc. Sec.*, No. 1:20CV2549, 2022 WL 681273, at *1 (N.D. Ohio Mar. 8, 2022) ("After this opinion, President Biden removed Commissioner Saul from his position and appointed Kilolo Kijakazi as the Acting Commissioner.").[3] Pursuant to *Seila Law*/*Collins*, this Court likewise recognizes that Section 902(a)(3)'s removal-restriction provision is unconstitutional and unenforceable.

---

[3] The parties have briefly disputed whether an acting Commissioner is similarly insulated from removal except for cause under the Act. Plaintiff has briefly argued that the removal-restriction provision purports to protect the tenure of anyone serving in the office of the Commissioner, even in an acting capacity. (Doc. No. 18, pg. 4). Defendant argues that pursuant to 42 U.S.C. § 902(b)(4), acting Commissioners like Nancy Berryhill—who ratified the appointment of the ALJ who decided Plaintiff's case—are removable at will. (Doc. No. 17, pgs. 6—9). The parties' dispute in this regard relates to the propriety of appointments of SSA officers who exercised authority over Plaintiff's claim. However, Plaintiff has made it clear that she is challenging the ALJ and Appeals Council's exercise of delegated authority, *not* their appointments. Accordingly, this debate is immaterial to the resolution of this case.

The Court's recognition of the unconstitutionality of the removal-restriction provision is, of course, not the end of the matter. "Having found that the removal restriction violates the Constitution, [the Court] turn[s] to the [Plaintiff's] request for relief." *Collins*, 141 S. Ct. at 1787. *See e.g.*, *Kaufmann*, 32 F.4th at 849 ("The final question, then, is the appropriate remedy for Claimant, whose appeal to the Appeals Council was denied while Commissioner Saul served under an unconstitutional removal provision."). In *Collins*, the Supreme Court explained that "an unconstitutional removal provision does not affect the *authority* of the underlying agency officials to act." *Kaufmann*, 32 F.4th at 849 (citing *Collins*, 141 S. Ct. at 1787—88 & n.23). Therefore, challengers are not entitled to an undoing of an officer's actions as though their exercise of authority is "void *ab initio*." *Collins*, 141 S. Ct. at 1788 n.24. As the Honorable Judge Karen Marston explained: "[t]here is a distinction between the exercise of authority that an official does not possess and the exercise of proper constitutional authority while subject to unlawful removal conditions." *Lewis v. Comm'r of Soc. Sec.*, No. CV 21-1202-KSM, 2022 WL 1136687, at *6 (E.D. Pa. Apr. 18, 2022). The distinction being that "[t]he former is presumptively void while the latter requires a showing of actual and causal harm." *Id.*

Moreover, to obtain "retrospective relief" a challenger must establish that *the unconstitutional provision* resulted in "compensable harm." *Collins*, 141 S. Ct. at 1788—89.[4]

---

[4] Some courts have treated Plaintiff's burden of showing how the removal-restriction provision inflicted harm as a standing issue. For instance, in *Wicker v. Kijakazi* the Honorable Magistrate Judge Marilyn Heffley found that the claimant who, like Plaintiff, sought a new hearing based on the unconstitutional provision in Section 902(a)(3), lacked "standing to file a constitutional challenge to the separation of powers violation because she has not established that she sustained an injury traceable to the purportedly unconstitutional removal clause to which Commissioner Saul was subject." No. CV 20-4771, 2022 WL 267896, at *10 (E.D. Pa. Jan. 28, 2022). Other courts have found similarly situated claimants "have standing to challenge unfavorable decisions on the basis of an unlawful removal provision," even if they ultimately fail to demonstrate "harm connected to the unconstitutional removal provision" that would entitle

Such a showing is certainly possible: in *Collins*, the Supreme Court explained that "the possibility that the unconstitutional restriction on the President's power to remove a Director of the FHFA could have such an effect," of inflicting compensable harm, "[could ]not be ruled out." *Id.* For example, if "the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal," the challengers might have been able to establish entitlement to retrospective relief. *Id.*[5] Therefore, pursuant to *Collins*, though "there is no reason to regard any actions taken by a Social Security Commissioner as void, even if 42 U.S.C. § 902(a)(3) is unconstitutional," a claimant can prove entitlement to a remedy if "the removal restriction was the cause of the harm suffered by the plaintiff." *Andino*, 2022 WL 1135010, at *6 (citing *Collins*, 141 S. Ct. at 1788—89) (explaining the "nexus" requirement between the harm and unconstitutional provision).

---

them to relief. *Andino v. Kijakazi*, No. CV 21-2852, 2022 WL 1135010, at *6 (E.D. Pa. Apr. 18, 2022) (citing cases).

      In this matter, Defendant has not challenged Plaintiff's standing to pursue her constitutional challenge to the underlying adjudication of her disability.  As the Supreme Court pointed out in *Collins*, Article III standing requires an "'injury in fact' that is 'fairly traceable' to the defendant's conduct and would likely be 'redressed by a favorable decision.'"  141 S. Ct. at 1779 (citation omitted).  The Court cautioned lower courts that, for purposes of standing as opposed to remedy, the traceability requirement pertained to the defendant's "allegedly unlawful conduct," "not to the provision of law that is challenged."  *Id.* (citation omitted).  Accordingly, insofar as Plaintiff has alleged an injury (the unfavorable decision) arising from SSA officers' exercise of purportedly illegitimate authority that could be remedied by remand for fresh administrative proceedings, the Court discerns no defect of standing that would prevent it from considering Plaintiff's constitutional challenge on its merits.

[5]     The Supreme Court also gave an example that, if the President had made "a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way," such events could demonstrate compensable harm arising from the unconstitutional provision.  *Id.*

In her reply brief, Plaintiff suggests that six harms arose from the "SSA's violation of her constitutional rights." (Doc. No. 18, pg. 4).[6] Her alleged injuries are broad and somewhat conclusory: she argues she was denied a "constitutionally valid hearing and adjudication from an ALJ;" "a constitutionally valid decision from an ALJ;" "a constitutionally valid adjudication process from the Appeals Council;" and "a constitutionally valid determination by the Appeals Council." (Doc. No. 18, pg. 4). She also includes among her alleged injuries, the "unfavorable decision from an unconstitutional ALJ adjudication process" and "an unfavorable determination from [the] constitutionally illicit Appeals Council adjudication process," *i.e.*, the unfavorable ALJ decision and Appeals Council's denial of her request for review. (*Id.*). She argues that, at every juncture, the ALJ and Appeals Council "exercised power they did not lawfully possess due to a constitutionally defective delegation of power." (Doc. No. 18, pgs. 5—6, 8).[7]

---

[6] For the reasons discussed herein, the Court rejects Plaintiff's argument that the separation-of-powers violation warrants a presumption of harm. (Doc. No. 18, pgs. 6—7). She cites *Cirko on behalf of Cirko v. Comm'r of Soc. Sec.* wherein the Third Circuit considered whether it would require exhaustion of an Appointments Clause challenge to the authority of ALJs. 948 F.3d 148, 153—54 (3d Cir. 2020). Therein, the Third Circuit held that "harm is presumed" for Appointments Clause violations because it can be "difficult to show direct harm" arising from an Appointments Clause violation. *Id.* at 154. However, the holding in *Cirko* does not support a presumption of harm here for a separation-of-powers violation. Plaintiff's appeal to these Appointments Clause cases—*Cirko* and *Carr v. Saul*, 141 S. Ct. 1352 (2021)—is foreclosed by the Supreme Court's decision in *Collins*. And, given Plaintiff's recognition that hers is not an Appointments Clause case, it is difficult to see how Plaintiff squares those cases with the Supreme Court's discussion of "compensable harm" in separation-of-powers cases in *Collins*, 141 S. Ct. at 1788. Plaintiff's attempt to distinguish her case from *Collins* (Doc. No. 18, pg. 6) is nullified by her abandonment of any "challenge [to] the adjudicators' appointments." (*Id.*). Plaintiff seems to accept that both Commissioner Saul and the Director of the FHFA in *Collins* were lawfully appointed, but both were protected from removal by an unconstitutional restraint on the President's removal power. (Doc. No. 18, pg. 6). Accordingly, Plaintiff's subsequent assertion that the government actors' exercise of power was lawful in *Collins* but unlawful in her case (*id.*) is a non sequitur.

[7] The Court acknowledges that it is generally the case that it is unauthorized by any "statutory authority . . . to review the Appeals Council decision to deny review." *Matthews*, 239

In her articulation of these injuries, however, Plaintiff has failed to explain to the Court how the unconstitutional removal-restriction provision inflicted actual harm. Plaintiff takes no issue with the validity of the "adjudicators' appointments." (Doc. No. 18, pg. 6). Therefore, she cannot claim that the ALJ or Appeals Council's exercise of authority was "void *ab initio*." *Collins*, 141 S. Ct. at 1788 n.24. Accordingly, to be entitled to a remedy, Plaintiff would have to connect the ALJ's unfavorable decision or Appeals Council's denial of review to the unconstitutional removal-restriction provision, *i.e.*, to the President's inability to remove the Commissioner at will. *Kaufmann*, 32 F.4th at 849. Plaintiff has failed to do so. In this matter, Plaintiff has presented no concrete evidence that, at the relevant time, "the President would have removed the agency's head but for the provision" or that the Commissioner "might have altered his behavior in a way that would have benefited" Plaintiff. *Id.* (citing *Collins*, 141 S. Ct. at 1789).[8] This is particularly true regarding Plaintiff's challenge to the ALJ's exercise of authority because the ALJ heard and decided Plaintiff's claim while former President Trump—who appointed Commissioner Saul—was in office and had no evident intention to remove Commissioner Saul from that office.

Plaintiff's best argument for "an adequate nexus between the unconstitutional provision and the action at issue," *Mor*, 2022 WL 73510, at *5, is that, but for the removal-restriction provision, President Biden would have removed Commissioner Saul from that office prior to

---

F.3d at 594. However, "when constitutional questions are in issue, the availability of judicial review is presumed." *Califano v. Sanders*, 430 U.S. 99, 109 (1977).

[8]    In *Kaufmann*, the United States Court of Appeals for the Ninth Circuit determined that the claimant had not managed to produce evidence that the removal-restriction provision in the Act caused her harm. *Id.* at 849—50. She had not, for instance, demonstrated that the President was interested in her benefits application or that Commissioner Saul had "directed the Appeals Council to decide her case in a particular way because of the statutory limits on the President's removal authority." *Id.*

February 10, 2021, when the Appeals Council denied her request for review.  Plaintiff submits that a White House official's statement concerning Commissioner Saul's termination later that year (July 9, 2021) shows that President Biden's early intent to install a new Commissioner was frustrated by the removal-restriction provision.  The statement criticized Commissioner Saul for "undermin[ing] and politiciz[ing] Social Security disability benefits" since the beginning of his term in 2019.  *Biden fires Saul as SSA commissioner*, FEDERAL NEWS NETWORK (9 July 2021), https://federalnewsnetwork.com/people/2021/07/biden-fires-saul-as-ssa-commissioner/.  Based on this and other indicia of President Biden's displeasure with Commissioner Saul, Plaintiff argues that the President "would have fired [him] immediately upon taking office had he believed it was legal at the time" and that he "only refrained from removing Mr. Saul because of the removal restriction" at issue.  (Doc. No. 18, pg. 10).

Though it is plausible that President Biden would have sought to remove Commissioner Saul earlier if not for the removal-restriction provision, that possibility does not adequately demonstrate compensable harm in this case.  The members of the Appeals Council were validly appointed and duly authorized to fulfill their official duties, and there is no evidence that Commissioner Saul influenced the Appeals Council's denial of Plaintiff's request for review.  That is, the Court has no reason to believe that Commissioner Saul used authority he only continued to possess due to the unconstitutional removal-restriction provision to affect the outcome of Plaintiff's request for review.[9]  Nor is there any evidence that the President was

---

9   The Court notes that this is somewhat to be expected because it would have been atypical for the Commissioner to have had any direct involvement in the adjudication of Plaintiff's application.  Though the Act charges the Commissioner with the responsibility for making disability determinations, 42 U.S.C. § 405(b)(1), the "four-step administrative review process" set out in the regulations to implement the Act proceeds without the Commissioner's direct involvement.  *Stevens v. Astrue*, No. CIV.A 08-18 ERIE, 2008 WL 4748178, at *6 (W.D. Pa.

personally concerned with the outcome of Plaintiff's case such that his ability to effect a change in leadership at the head of the SSA would have affected the outcome of the matter. *See Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring).

Put another way, Plaintiff has not explained to the Court how the adjudication or outcome of her case would have been different if only Acting Commissioner Kijakazi had been installed earlier. Plaintiff points to no changes in the regulations, updated guidance, or personnel changes instituted by the Acting Commissioner that would have inured to her benefit.[10] Without such a showing, Plaintiff's argument is—essentially—that though she has no apparent need of being made whole, she would nevertheless like a second administrative determination of her disability. As Justice Kagan pointed out in her concurrence in *Collins*, "usual remedial principles" counsel against "put[ting] . . . plaintiffs 'in a better position' than if no constitutional violation had occurred" at all. *Id.* at 1801. Accordingly, the Court finds that the constitutional defect in Section 902(a)(3) does not warrant remand of this matter for fresh administrative proceedings.[11]

---

Oct. 24, 2008) (citing 20 C.F.R. § 416.1400) (describing the regulatory process for determining disability under the Act).

[10]     Plaintiff has argued that "the ALJ decided this case under regulations promulgated by Mr. Saul when Mr. Saul had no constitutional authority to issue those rules," (Doc. No. 14, pg. 6), but she has pointed to no specific regulations or official guidance that Commissioner Saul had the opportunity to implement because the President believed the Commissioner could not be removed.

[11]     Plaintiff has alternatively argued that Defendant waived any defense regarding actions taken by the Appeals Council because she failed to defend the Appeals Council in her summary judgment motion and brief. (Doc. No. 18, pgs. 4—5). However, the Court finds no such waiver. In her own opening brief, Plaintiff focused on the ALJ and whether his authority was lawfully delegated by Commissioner Saul. (Doc. No. 14, pgs. 5, 7). As the ALJ's authority was the focus of Plaintiff's argument, Defendant appropriately focused her defense of the underlying decision on the ALJ in her cross motion for summary judgment. Contrary to Plaintiff's characterization, Defendant also addressed the Appeals Council's actions and explained that her argument that Plaintiff could not show harm arising from the removal-restriction provision applied both to the ALJ and the Appeals Council. (Doc. No. 17, pg. 11 n.4).

Having found no compensable harm requiring a remedy, the Court need not address Defendant's other arguments for affirmance.

Finally, the Court need only briefly address Plaintiff's challenge to the ALJ's determination of her RFC.[12]  A claimant's RFC "is the most [he/she] can still do despite [his/her] limitations," 20 C.F.R. § 404.1545(a)(1), and it determines whether a claimant can return to past relevant work. *Id.* § 404.1520(a)(4)(iv).  ALJs must consider "all of the relevant medical and other evidence" toward a claimant's RFC. *Id.* § 404.1545(a)(3).  Plaintiff challenges the ALJ's omission of a leg-elevation limitation from her RFC: "The evidence in this case supports the need for leg elevation at least since December of 2018." (Doc. No. 14, pg. 7).  The ALJ's decision demonstrates the ALJ considered Plaintiff's alleged leg-elevation limitation but found that such a limitation was not supported by the evidence of record.  Twice in the decision, the ALJ addressed leg elevation, but found no objective evidence in the record that corroborated the necessity of that limitation.  (R. 23 ("There are no directives in the medical evidence for claimant to elevate her feet."), 25 ("There is no evidence that any physician instructed claimant to elevate her legs.")).  The Court finds no error in the ALJ's assessment of the alleged leg-elevation limitation and his exclusion of that limitation from the RFC based on the lack of objective evidence demonstrating its necessity in the record.

---

[12]   Defendant argues that Plaintiff's challenge to the RFC determination is merely a passing reference that should not be found to raise the issue.  The Court agrees that Plaintiff's RFC challenge is "fleeting" enough to be "forfeited." *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 890 n.11 (3d Cir. 2020).  However, the question of whether the ALJ supported the RFC with substantial evidence is easily resolved in this matter; therefore, the Court will briefly address the question on its merits.

## IV. Conclusion

Based on the foregoing, the Court finds that the constitutional defect in Section 902(a)(3) of the Act effected no compensable harm on Plaintiff. Additionally, the Court is assured that the ALJ's decision finding Plaintiff to be not disabled is supported by substantial evidence. Accordingly, the Court grants Defendant's motion for summary judgment and denies Plaintiff's motion for summary judgment as specified above, thus affirming the ALJ's decision in this matter.

s/ Alan N. Bloch
United States District Judge

ecf:   Counsel of Record